# EXHIBIT A

Clerk of the Superior Court
*** Electronically Filed ***
E. Luetke, Deputy
6/21/2024 12:10:17 PM
Filing ID 18031332

**Jaburg & Wilk, P.C.**
1850 N. Central Avenue, Suite 1200
Phoenix, AZ 85004
(602) 248-1000

Alden A. Thomas (#031900)
aat@jaburgwilk.com
Corrinne R. Viola (#033386)
crv@jaburgwilk.com
Emma J. Freeburg (#038865)
ejf@jaburgwilk.com

*Attorneys for Plaintiff*

## SUPERIOR COURT OF ARIZONA
## COUNTY OF MARICOPA

| | |
|---|---|
| Ocean Agatat,<br><br>        Plaintiff,<br><br>v.<br><br>Westwind School of Aeronautics, Phoenix, LLC dba United Aviate Academy,<br><br>        Defendant. | Case No.  **CV2024-016166**<br><br>**COMPLAINT** |

Plaintiff Ocean Agatat alleges as follows:

### PARTIES, JURISDICTION & VENUE

1.    Plaintiff Ocean Agatat is an individual who resides in Oregon.

2.    Defendant Westwind School of Aeronautics Phoenix, LLC d/b/a United Aviate Academy ("the Academy") is a limited liability company organized under Delaware law with its principal place of business in Maricopa County.

3.    This Court has jurisdiction over this matter under A.R.S. § 12-123.

4.    Venue is proper in this court because the acts and omissions giving rise to Agatat's claims occurred in Maricopa County.

23452-23452-00001\AAT\JJB\6049347v1

**JABURG WILK**
LAW FIRM

## GENERAL ALLEGATIONS

**I.    The Academy's Advertisements & Representations**

5.    The Academy owns and operates the United Aviate Academy, which is located in Goodyear, Arizona.

6.    The Academy offers an Aviate program to train students to become commercial pilots.

7.    The Academy's website advertises that students who enroll in the Aviate program will complete pilot training in one year at a total cost of $89,000 or $71,250 for students who secure a private pilot training tuition waiver of $17,750 ("the Tuition Waiver").

8.    The FAA requires students to undergo at least forty hours of flight training to obtain a private pilot license. This includes at least twenty hours of flight training from an authorized instructor.

9.    The Academy advertised that students enrolled in the Aviate program would "go from zero flight hours to getting your private pilot license in three months."

10.    The Academy advertised students would obtain a private pilot license in only three months because it offered students "a full-time intensive course of study and flight activity of 5 days a week."

11.    The Academy advertised that after students obtained their private pilot licenses, they could expect to complete their remaining pilot training in nine months pursuant to the following timeline:

     a.   Instrumental rating – three months;

     b.   Commercial SE rating – two months;

     c.   Certified Flight Instructor – two months;

     d.   Certified Flight Instructor (instrument) – less than one month;

     e.   Commercial Multi-Engine – one month; and

     f.   Multi-Engine Flight Instructor – less than one month.

2

12.     The Academy advertised that after completing this training, students would then begin completing hours necessary to obtain an Airline Transport Pilot certificate.

13.     In or around 2022, Mr. Agatat viewed such advertisements and contacted the Academy for additional information.

14.     Agatat had discussions with several Academy's agents and/or representatives, including recruiters, who reiterated that if Mr. Agatat enrolled in the Academy, he would complete the Aviate program in a year at the cost referenced on the Academy's website.

15.     The Academy's agents also represented that if Agatat applied and was accepted to the Academy, he would receive the Tuition Waiver.

16.     The Academy's agents also represented dorm rooms would be made available so that Agatat could reduce the living expenses he would otherwise incur living off campus.

17.     Agatat relied upon these advertisements and representations when he applied for admission and matriculated at the Academy.

## II.     Agatat's Tenure at the Academy

18.     Agatat applied to and enrolled in the Academy so that he could become a commercial pilot and increase his earning potential upon his graduation.

19.     On or around February 28, 2022, Agatat entered a written agreement with the Academy wherein the Academy agreed to provide him the Tuition Waiver ("the Tuition Waiver Agreement").

20.     As part of the Tuition Waiver Agreement, the Parties agreed Agatat would receive an unconditional tuition waiver if he obtained his private pilot license at the Academy, applied for the Aviate program, and remained "enrolled in the Academy and pursue, in good faith, the certificates or rating necessary to obtain his [] commercial pilot certificate."

3

21.    Agatat and the Academy also entered into an agreement whereby Agatat agreed to pay the Academy tuition in exchange for education services ("the Tuition Agreement").

22.    Agatat paid the Academy at least $71,250 in tuition and costs.

23.    Agatat took out a student loan of approximately $125,000 to cover his tuition and living expenses and to satisfy his obligations under the agreement.

24.    Agatat moved from Oregon to Arizona to attend the Academy shortly before the fall 2022 academic term.

25.    Despite the Academy's representations that dorm space would be available to him, no such space was available.

26.    Thus, Agatat was forced to incur increased living expenses living off campus.

27.    On September 12, 2022, Mr. Agatat began pursuing his private pilot license at the Academy.

28.    Based upon the Academy's representation that he would complete the Aviate program in one year, his wife and their infant chose to remain in Oregon while he completed the program.

29.    Agatat also left his full-time job to attend the Academy based upon representations about the career opportunities he would have upon his graduation.

30.    Mr. Agatat excelled in his coursework and was one of the top students in his class.

**III.    The Academy Engages in Consumer Fraud**

31.    Despite the Academy's representations that students would complete the Aviate program in a year, the Academy lacked sufficient instructors, planes, and other resources for students to complete the Aviate program within the timelines advertised.

32.    The "full-time intensive course of study" the Academy offered to students largely consisted of self-study courses.

4

33.     Additionally, the few on-campus classes largely involved instructors telling students to look up the answers to assessment required by the FAA on Google and then signing students' attendance logs.

34.     Upon information and belief, the Academy required students who did not complete the Aviate program within one year to pay the Academy additional tuition for the program.

35.     Thus, the Academy had a financial incentive to delay students' progression through the Aviate program.

36.     Due to the Academy's lack of instructors, planes, and other related resources, it took Agatat over four months to obtain his private pilot license notwithstanding his commitment to "a full-time intensive course of study" and attempts to access the Academy's purported "flight activity of 5 days a week."

37.     Furthermore, it took him longer to complete the subsequent training towards his commercial pilot license than the Academy advertised for the same reasons.

38.     Every time Agatat raised concerns about the Academy's failure to provide the requisite training and resources required to complete the Aviate program within one year, Academy representatives falsely represented it was working to correct the issue and Agatat could "make up" any lost time by performing additional flight lessons later to ensure he completed the program on time.

39.     Agatat reasonably relied on the Academy's representations to this effect as he progressed through the Aviate program.

**IV.     Agatat is Unjustifiably Expelled**

40.     In June 2023, the Academy informed Agatat that it planned to dismiss him from the Aviate program.

41.     The Academy provided Agatat a Notice of Dismissal, which claimed that the Academy determined Agatat violated the Student Code of Conduct.

5

42.     However, the Notice of Dismissal failed to articulate the nature of Agatat's alleged violation.

43.     The Notice confirmed Agatat had the right to appeal the Academy's preliminary dismissal decision.

44.     It further confirmed, "The decision rendered in a hearing/appeal shall be final."

45.     Accordingly, Agatat submitted a written appeal to the Academy on June 30, 2023.

46.     Agatat ultimately learned that the Academy's justification for dismissing him stemmed from vague and unsubstantiated allegations that he had engaged in inappropriate conduct with another student and a former employee.

47.     However, Agatat was never given an opportunity to respond to the allegations before he submitted his appeal.

48.     On July 13, 2023, Agatat met with Tom Pettit, the Academy's Senior Manager of Admissions, to discuss his appeal and enrollment status.

49.     During this meeting, Pettit acknowledged that he had concerns about the way Mr. Agatat was treated and that the Academy had shortcomings with respect to its "investigation processes" as a new academic institution.

50.     As a result of his discussion with Pettit, Agatat reasonably believed that the Academy would approve his appeal and permit him to complete the Aviate program.

51.     He also relied upon the Academy's representations that he could make up flight lessons so that he would graduate on time.

52.     Nevertheless, on July 14, 2023, the Academy denied Agatat's appeal, rendering his dismissal from the Academy final.

53.     The Academy required Agatat to pay back the equivalent sum of the Tuition Waiver because he did not complete the Aviate program.

54.     Of course, Agatat did not choose to leave the program.

6

JABURG WILK
LAW FIRM

**V.    Agatat Suffers Damages**

55.    The Academy dismissed Agatat without reasonable justification, and Agatat did not receive the benefit of his bargain (i.e., the tuition he paid in exchange for tuition services).

56.    For example, at the time of his dismissal, Agatat had not yet completed the Commercial SE rating, Certified Flight Instructor, Certified Flight Instructor (instrument), Commercial Multi-Engine, and Multi-Engine Flight Instructor trainings.

57.    Nevertheless, even had the Academy not dismissed Agatat in July 2023, Agatat reasonably discovered at that time it would have been impossible for him to complete the Aviate program within the one-year period advertised by the Academy because of its deliberate misrepresentations about the instructors, planes, and other resources it claimed would be made available to student along with its misrepresentations regarding "make up" trainings it claimed would be provided to students.

58.    As a proximate result of the Academy's conduct, Agatat has suffered lost tuition, a lost Tuition Waiver, lost wages, increased living expenses, lost career opportunities, emotional distress, and harm to his reputation.

59.    Agatat was also forced to retain counsel to pursue this action.

<div align="center">

**COUNT ONE**
**BREACH OF CONTRACT**

</div>

60.    Agatat repeats and realleges each allegation of this Complaint as if fully set forth in this claim.

61.    The Tuition Agreement is a valid and enforceable contract between Agatat and the Academy.

62.    Therein, the Academy contracted with Agatat to provide education services in exchange for payment of tuition.

23452-23452-00001\AAT\JJB\6049347v1

63.    The Academy breached the contract by dismissing Agatat, without justification, and accepting Agatat's tuition payment without giving him the benefit of his bargain.

64.    Agatat has satisfied all his obligations under the contract.

65.    As a result of The Academy's breach, Agatat has been damaged in an amount to be proven at trial.

## COUNT TWO
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

66.    Agatat repeats and realleges each allegation of this Complaint as if fully set forth in this claim.

67.    Arizona law implies a covenant of good faith and fair dealing into every contract.

68.    At all material times, the Academy owed Agatat a duty of good faith and fair dealing arising out of performance under the Tuition Agreement.

69.    At all material times, the Academy owed Agatat a duty of good faith and fair dealing arising out of performance under the Tuition Waiver Agreement.

70.    The Academy breached the duty of good faith and fair dealing it owed under the Tuition Agreement when it dismissed Agatat from the Aviate program without justification.

71.    The Academy breached the duty of good faith and fair dealing it owed under the Tuition Waiver Agreement when it required Agatat to repay a sum equivalent to the Tuition Waiver when it dismissed Agatat from the Aviate program without justification.

72.    As a direct and proximate result of The Academy's conduct, Agatat has sustained damages in an amount to be proven at trial.

/ / /

8

23452-23452-00001\AAT\JJB\6049347v1

**COUNT THREE**
**PROMISSORY ESTOPPEL**

73.    Agatat repeats and realleges each allegation of this Complaint as if fully set forth.

74.    Alternatively, to the extent the Court determines the Parties did not enter into an enforceable contract, the Academy made a clear and unambiguous promise to Agatat that it would provide him education services in exchange for his payment of tuition.

75.    The Academy also made a clear and unambiguous promise to Agatat that it would provide him a Tuition Waiver if he enrolled in the Aviate program and pursued his commercial pilot license in good faith.

76.    The Academy should have reasonably foreseen that Agatat would rely upon these promises.

77.    Agatat relied on the Academy's promise to his detriment as he obtained a student loan to pay for his tuition and has not received the education services promised to him.

78.    Agatat's reliance on the Academy's promises was justified.

79.    Agatat has been damaged as a result of the Academy's actions.

**COUNT FOUR**
**UNJUST ENRICHMENT**

80.    Agatat repeats and realleges each allegation of this Complaint as if fully set forth in this claim.

81.    In the event the Court determines the parties did not enter into an enforceable contract, this Count is pled in the alternative.

82.    By the Academy's acts and omissions set forth above, the Academy received and was enriched by Agatat's payment of tuition and repayment of the Tuition Waiver.

9

23452-23452-00001\AAT\JJB\6049347v1

1   83.   Agatat has been impoverished by the Academy's failure to provide him
2   education services in exchange for his payment of tuition.

3   84.   Agatat has also been impoverished by his forced repayment of the Tuition
4   Waiver back to the Academy.

5   85.   There is a clear connection between Agatat's impoverishment and the
6   Academy's enrichment.

7   86.   It would be inequitable and unjust to permit The Academy to retain the
8   benefit of Agatat's tuition payment.

9
10
<div align="center">

**COUNT FIVE**
**CONSUMER FRAUD**

</div>

11   87.   Agatat incorporates by reference all above allegations as if fully set forth
12   herein.

13   88.   Pursuant to the Arizona Consumer Fraud Act ("ACFA"):

14      The act, use or employment by any person of any deception,
15      deceptive or unfair act or practice, fraud, false pretense, false
       promise, misrepresentation, or concealment, suppression or
16      omission of any material fact with intent that others rely on
       such concealment, suppression or omission, in connection
17      with the sale or advertisement of any merchandise whether
       or not any person has in fact been misled, deceived or
18      damaged thereby, is declared to be an unlawful practice.

19   A.R.S. § 44-1522(A).

20   89.   The Academy's education services qualify as "merchandise" under the
21   ACFA. *See* A.R.S. § 44-1521(5).

22   90.   Agatat's payment of tuition in exchange for education services constituted
23   a "sale" of "merchandise" under the ACFA. A.R.S. § 44-1521(7).

24   91.   The Academy violated the ACFA by making false promises and/or
25   misrepresentations about the total cost of its program and the amount of time it would
26   take a student to complete pilot training.

27
28

23452-23452-00001\AAT\JJB\6049347v1

92.    The Academy's false representations and/or omissions about the Aviate program on its website and made by its agents qualify as "advertisements" of "merchandise" under the ACFA. A.R.S. § 44-1521(1).

93.    The Academy made such false representations and/or omissions with the intent that Agatat and other prospective students rely on them.

94.    Agatat reasonably relied on the Academy's false representations and/or omissions about the Aviate program when he chose to enroll in the Academy.

95.    As a result, Agatat suffered damages in an amount to be made at trial.

96.    The Academy engaged in deceptive practices that were wanton, reckless, spiteful, motivated by ill-will, and that were made with reckless indifference to Agatat's interests. As a result, Agatat is entitled to an award for punitive damages.

## DISCOVERY TIER

97.    Agatat requests that this case be assigned to Tier 2 for discovery purposes.

## JURY TRIAL DEMAND

98.    Agatat demands a jury trial on all claims and issues set forth herein.

## REQUEST FOR RELIEF

WHEREFORE, Agatat requests a judgment against The Academy as follows:

a.  For compensatory damages;

b.  For consequential damages;

c.  For punitive damages pursuant to A.R.S. § 44-1521, *et seq.*;

d.  For prejudgment interest at the highest legal rate from the date due until the date of judgment;

e.  For reasonable attorneys' fees and costs;

JABURG WILK
LAW FIRM

11

23452-23452-00001\AAT\JJB\6049347v1

1    f.   For interest on the foregoing amounts at the highest legal rate from the date

2         of Judgment until paid; and

3    g.   For such other and further relief as is proper and just.

4

5    DATED this 21st day of June, 2024.

6

7                              JABURG & WILK, P.C.

8

9                              /s/ Alden A. Thomas
10                             Alden A. Thomas (#031900)
                               aat@jaburgwilk.com
11                             Corrinne R. Viola (#033386)
                               crv@jaburgwilk.com
12                             Emma J. Freeburg (#038865)
                               ejf@jaburgwilk.com
13                             *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        12

# EXHIBIT B

| Attorney or Party without Attorney:<br>Alden A. Thomas (SBN 031900)<br>JABURG & WILK, PC<br>3200 N. CENTRAL AVENUE SUITE 2000<br>PHOENIX , AZ 85012<br>Telephone No: (602) 248-1000 | | CLERK OF THE<br>SUPERIOR COURT *For Court use Only*<br>FILED<br>M. PATTERSON, DEP<br><br>2024 JUN 24  PM 3:34 |
|---|---|---|
| Attorney For:  Plaintiff | Ref. No. or File No.:   23452-1 | |
| Insert name of Court, and Judicial District and Branch Court:<br>Arizona Superior Court, County of Maricopa | | |
| Plaintiff:  OCEAN AGATAT,<br>Defendant:  WESTWIND SCHOOL OF AERONAUTICS, PHOENIX, LLC dba UNITED AVIATE ACADEMY, | | |

| AFFIDAVIT OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>CV2024-016166 |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   SUMMONS; COMPLAINT; CERTIFICATE OF COMPULSORY ARBITRATION; CIVIL COVER SHEET

3. *a. Party served:*     WESTWIND SCHOOL OF AERONAUTICS, PHOENIX, LLC dba UNITED AVIATE ACADEMY
   *b. Person served:*    Everett Bethea - CSR for Ct Corporation System as Statutory Agent

4. *Address where the party was served:*    3800 North Central Avenue Suite 460, Phoenix, AZ 85012

5. *I served the party:*
   a. by substituted service.   On: Mon, Jun 24 2024 at: 11:31 AM by leaving the copies with or in the presence of:
   Everett Bethea - CSR for Ct Corporation System as Statutory Agent , African American , Male , Age: 45 , Hair: Black , Eyes: Brown , Description: Moustache Seated .

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

   Service: $55.25, Mileage: $24.00, Affidavit: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $89.25

   I Declare under penalty of perjury under the laws of the State of
   Arizona that the foregoing is true and correct.

6. *Person Executing:*
   *a.* Eric Henningsen MC-7129, Maricopa County;
   b. FIRST LEGAL
   3737 North 7th. Street Suite 209
   PHOENIX, AZ 85014
   c. (602) 248-9700

   06/24/2024
   _____                      _____
   (Date)                                                      (Signature)

7. *STATE OF ARIZONA, COUNTY OF MARICOPA Subscribed and sworn to (or affirmed) before on this 24 day of June, 2024 by*
   *Eric Henningsen (MC-7129, Maricopa County) proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

   _____
   (Notary Signature)





| | ANGELITA ZUNIGA<br>NOTARY PUBLIC - ARIZONA<br>MARICOPA COUNTY<br>COMMISSION # 639503<br>MY COMMISSION EXPIRES<br>DECEMBER 05, 2026 | |
|---|---|---|

AFFIDAVIT OF
SERVICE

11293336
(10541429)

Person Filing: Alden A Thomas
Address (if not protected): 1850 N Central Avenue Suite 1200
City, State, Zip Code: Phoenix, AZ 85004
Telephone: (602)214-1000X1010
Email Address: aat@jaburgwilk.com
Representing [□ ] Self or [☒ ] Attorney for:
Lawyer's Bar Number: 031900, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
E. Luetke, Deputy
6/21/2024 12:10:17 PM
Filing ID 18031335

# SUPERIOR COURT OF ARIZONA
## IN MARICOPA COUNTY

Case Number: **CV2024-016166**

Ocean Agatat
_____
Name of Plaintiff

**SUMMONS**

AND

Westwind School of Aeronautics Phoenix LLC, DBA
United Aviate Academy
_____
Name of Defendant

> **WARNING:** This is an official document from the court that affects your rights. Read this carefully.
> If you do not understand it, contact a lawyer for help.

**FROM THE STATE OF ARIZONA TO:** Westwind School of Aeronautics Phoenix LLC, DBA United Aviate Academy
_____
Name of Defendant

1.    **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.    If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the document in this case.

3.  If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.  Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.  Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *June 21, 2024*

*JEFF FINE*
Clerk of Superior Court

By: *E. LUETKE*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
E. Luetke, Deputy
6/21/2024 12:10:17 PM
Filing ID 18031334

Person/Attorney Filing: Alden A Thomas
Mailing Address: 1850 N Central Avenue Suite 1200
City, State, Zip Code: Phoenix, AZ 85004
Phone Number: (602)214-1000X1010
E-Mail Address: aat@jaburgwilk.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 031900, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

Ocean Agatat
Plaintiff(s),
v.

Westwind School of Aeronautics
Phoenix LLC, DBA United Aviate
Academy
Defendant(s).

Case No.  **CV2024-016166**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the Local Rules of Practice for the Maricopa County Superior Court, and I further certify that this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of the Arizona Rules of Civil Procedure.


RESPECTFULLY SUBMITTED this


By: Alden A Thomas /s/
    **Plaintiff/Attorney for Plaintiff**

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

Clerk of the Superior Court
*** Electronically Filed ***
E. Luetke, Deputy
6/21/2024 12:10:17 PM
Filing ID 18031333

**Plaintiff's Attorneys:**

Alden A Thomas - Primary Attorney
Bar Number: 031900, issuing State: AZ
Law Firm: Jaburg & Wilk, P.C.
1850 N Central Avenue Suite 1200
Phoenix, AZ 85004
Telephone Number: (602)214-1000X1010
Email address: aat@jaburgwilk.com

**CV2024-016166**

Corrinne R. Viola
Bar Number: 033386, issuing State: AZ
Law Firm: Jaburg & Wilk, P.C.
Telephone Number: (602)214-1005

Emma J. Freeburg
Bar Number: 038865, issuing State: AZ
Law Firm: Jaburg & Wilk, P.C.
Telephone Number: (602)248-1037

**Plaintiff:**

Ocean Agatat
1850 N. Central Ave. Suite 1200
Phoenix, AZ 85004
Telephone Number: (602)214-1000
Email address: aat@jaburgwilk.com

**Defendant:**

Westwind School of Aeronautics Phoenix LLC, DBA United Aviate Academy
c/o CT Corporation System 3800 N Central Ave, Suite 460
Phoeix, AZ 85012

Discovery Tier t2

Case Category: Contracts
Case Subcategory: Other Contract (Breach of Contract)

AZTurboCourt.gov Form Set #951.4246

Clerk of the Superior Court
*** Electronically Filed ***
E. Luetke, Deputy
6/21/2024 12:10:17 PM
Filing ID 18031332

**Jaburg & Wilk, P.C.**
1850 N. Central Avenue, Suite 1200
Phoenix, AZ 85004
(602) 248-1000

Alden A. Thomas (#031900)
aat@jaburgwilk.com
Corrinne R. Viola (#033386)
crv@jaburgwilk.com
Emma J. Freeburg (#038865)
ejf@jaburgwilk.com

*Attorneys for Plaintiff*

## SUPERIOR COURT OF ARIZONA
## COUNTY OF MARICOPA

| | |
|---|---|
| Ocean Agatat,<br><br>                       Plaintiff,<br><br>v.<br><br>Westwind School of Aeronautics, Phoenix, LLC dba United Aviate Academy,<br><br>                       Defendant. | Case No.  **CV2024-016166**<br><br>**COMPLAINT** |

Plaintiff Ocean Agatat alleges as follows:

### PARTIES, JURISDICTION & VENUE

1.      Plaintiff Ocean Agatat is an individual who resides in Oregon.

2.      Defendant Westwind School of Aeronautics Phoenix, LLC d/b/a United Aviate Academy ("the Academy") is a limited liability company organized under Delaware law with its principal place of business in Maricopa County.

3.      This Court has jurisdiction over this matter under A.R.S. § 12-123.

4.      Venue is proper in this court because the acts and omissions giving rise to Agatat's claims occurred in Maricopa County.

**JABURG WILK**
LAW FIRM

1            <u>**GENERAL ALLEGATIONS**</u>

2 **I.**     **The Academy's Advertisements & Representations**

3          5.      The Academy owns and operates the United Aviate Academy, which is
4 located in Goodyear, Arizona.

5          6.      The Academy offers an Aviate program to train students to become
6 commercial pilots.

7          7.      The Academy's website advertises that students who enroll in the Aviate
8 program will complete pilot training in one year at a total cost of $89,000 or $71,250 for
9 students who secure a private pilot training tuition waiver of $17,750 ("the Tuition
10 Waiver").

11          8.      The FAA requires students to undergo at least forty hours of flight training
12 to obtain a private pilot license. This includes at least twenty hours of flight training from
13 an authorized instructor.

14          9.      The Academy advertised that students enrolled in the Aviate program
15 would "go from zero flight hours to getting your private pilot license in three months."

16          10.     The Academy advertised students would obtain a private pilot license in
17 only three months because it offered students "a full-time intensive course of study and
18 flight activity of 5 days a week."

19          11.     The Academy advertised that after students obtained their private pilot
20 licenses, they could expect to complete their remaining pilot training in nine months
21 pursuant to the following timeline:

22            a.    Instrumental rating – three months;

23            b.    Commercial SE rating – two months;

24            c.    Certified Flight Instructor – two months;

25            d.    Certified Flight Instructor (instrument) – less than one month;

26            e.    Commercial Multi-Engine – one month; and

27            f.    Multi-Engine Flight Instructor – less than one month.

28                              2

12.    The Academy advertised that after completing this training, students would then begin completing hours necessary to obtain an Airline Transport Pilot certificate.

13.    In or around 2022, Mr. Agatat viewed such advertisements and contacted the Academy for additional information.

14.    Agatat had discussions with several Academy's agents and/or representatives, including recruiters, who reiterated that if Mr. Agatat enrolled in the Academy, he would complete the Aviate program in a year at the cost referenced on the Academy's website.

15.    The Academy's agents also represented that if Agatat applied and was accepted to the Academy, he would receive the Tuition Waiver.

16.    The Academy's agents also represented dorm rooms would be made available so that Agatat could reduce the living expenses he would otherwise incur living off campus.

17.    Agatat relied upon these advertisements and representations when he applied for admission and matriculated at the Academy.

## II.    Agatat's Tenure at the Academy

18.    Agatat applied to and enrolled in the Academy so that he could become a commercial pilot and increase his earning potential upon his graduation.

19.    On or around February 28, 2022, Agatat entered a written agreement with the Academy wherein the Academy agreed to provide him the Tuition Waiver ("the Tuition Waiver Agreement").

20.    As part of the Tuition Waiver Agreement, the Parties agreed Agatat would receive an unconditional tuition waiver if he obtained his private pilot license at the Academy, applied for the Aviate program, and remained "enrolled in the Academy and pursue, in good faith, the certificates or rating necessary to obtain his [] commercial pilot certificate."

3

21.    Agatat and the Academy also entered into an agreement whereby Agatat agreed to pay the Academy tuition in exchange for education services ("the Tuition Agreement").

22.    Agatat paid the Academy at least $71,250 in tuition and costs.

23.    Agatat took out a student loan of approximately $125,000 to cover his tuition and living expenses and to satisfy his obligations under the agreement.

24.    Agatat moved from Oregon to Arizona to attend the Academy shortly before the fall 2022 academic term.

25.    Despite the Academy's representations that dorm space would be available to him, no such space was available.

26.    Thus, Agatat was forced to incur increased living expenses living off campus.

27.    On September 12, 2022, Mr. Agatat began pursuing his private pilot license at the Academy.

28.    Based upon the Academy's representation that he would complete the Aviate program in one year, his wife and their infant chose to remain in Oregon while he completed the program.

29.    Agatat also left his full-time job to attend the Academy based upon representations about the career opportunities he would have upon his graduation.

30.    Mr. Agatat excelled in his coursework and was one of the top students in his class.

**III.    The Academy Engages in Consumer Fraud**

31.    Despite the Academy's representations that students would complete the Aviate program in a year, the Academy lacked sufficient instructors, planes, and other resources for students to complete the Aviate program within the timelines advertised.

32.    The "full-time intensive course of study" the Academy offered to students largely consisted of self-study courses.

4

33.     Additionally, the few on-campus classes largely involved instructors telling students to look up the answers to assessment required by the FAA on Google and then signing students' attendance logs.

34.     Upon information and belief, the Academy required students who did not complete the Aviate program within one year to pay the Academy additional tuition for the program.

35.     Thus, the Academy had a financial incentive to delay students' progression through the Aviate program.

36.     Due to the Academy's lack of instructors, planes, and other related resources, it took Agatat over four months to obtain his private pilot license notwithstanding his commitment to "a full-time intensive course of study" and attempts to access the Academy's purported "flight activity of 5 days a week."

37.     Furthermore, it took him longer to complete the subsequent training towards his commercial pilot license than the Academy advertised for the same reasons.

38.     Every time Agatat raised concerns about the Academy's failure to provide the requisite training and resources required to complete the Aviate program within one year, Academy representatives falsely represented it was working to correct the issue and Agatat could "make up" any lost time by performing additional flight lessons later to ensure he completed the program on time.

39.     Agatat reasonably relied on the Academy's representations to this effect as he progressed through the Aviate program.

**IV.    Agatat is Unjustifiably Expelled**

40.     In June 2023, the Academy informed Agatat that it planned to dismiss him from the Aviate program.

41.     The Academy provided Agatat a Notice of Dismissal, which claimed that the Academy determined Agatat violated the Student Code of Conduct.

5

**JABURG WILK**
LAW FIRM

1    42.    However, the Notice of Dismissal failed to articulate the nature of Agatat's

2    alleged violation.

3    43.    The Notice confirmed Agatat had the right to appeal the Academy's

4    preliminary dismissal decision.

5    44.    It further confirmed, "The decision rendered in a hearing/appeal shall be

6    final."

7    45.    Accordingly, Agatat submitted a written appeal to the Academy on June

8    30, 2023.

9    46.    Agatat ultimately learned that the Academy's justification for dismissing

10    him stemmed from vague and unsubstantiated allegations that he had engaged in

11    inappropriate conduct with another student and a former employee.

12    47.    However, Agatat was never given an opportunity to respond to the

13    allegations before he submitted his appeal.

14    48.    On July 13, 2023, Agatat met with Tom Pettit, the Academy's Senior

15    Manager of Admissions, to discuss his appeal and enrollment status.

16    49.    During this meeting, Pettit acknowledged that he had concerns about the

17    way Mr. Agatat was treated and that the Academy had shortcomings with respect to its

18    "investigation processes" as a new academic institution.

19    50.    As a result of his discussion with Pettit, Agatat reasonably believed that

20    the Academy would approve his appeal and permit him to complete the Aviate program.

21    51.    He also relied upon the Academy's representations that he could make up

22    flight lessons so that he would graduate on time.

23    52.    Nevertheless, on July 14, 2023, the Academy denied Agatat's appeal,

24    rendering his dismissal from the Academy final.

25    53.    The Academy required Agatat to pay back the equivalent sum of the

26    Tuition Waiver because he did not complete the Aviate program.

27    54.    Of course, Agatat did not choose to leave the program.

28

6

JABURG WILK
LAW FIRM

**V. Agatat Suffers Damages**

55. The Academy dismissed Agatat without reasonable justification, and Agatat did not receive the benefit of his bargain (i.e., the tuition he paid in exchange for tuition services).

56. For example, at the time of his dismissal, Agatat had not yet completed the Commercial SE rating, Certified Flight Instructor, Certified Flight Instructor (instrument), Commercial Multi-Engine, and Multi-Engine Flight Instructor trainings.

57. Nevertheless, even had the Academy not dismissed Agatat in July 2023, Agatat reasonably discovered at that time it would have been impossible for him to complete the Aviate program within the one-year period advertised by the Academy because of its deliberate misrepresentations about the instructors, planes, and other resources it claimed would be made available to student along with its misrepresentations regarding "make up" trainings it claimed would be provided to students.

58. As a proximate result of the Academy's conduct, Agatat has suffered lost tuition, a lost Tuition Waiver, lost wages, increased living expenses, lost career opportunities, emotional distress, and harm to his reputation.

59. Agatat was also forced to retain counsel to pursue this action.

**COUNT ONE**
**BREACH OF CONTRACT**

60. Agatat repeats and realleges each allegation of this Complaint as if fully set forth in this claim.

61. The Tuition Agreement is a valid and enforceable contract between Agatat and the Academy.

62. Therein, the Academy contracted with Agatat to provide education services in exchange for payment of tuition.

63.     The Academy breached the contract by dismissing Agatat, without justification, and accepting Agatat's tuition payment without giving him the benefit of his bargain.

64.     Agatat has satisfied all his obligations under the contract.

65.     As a result of The Academy's breach, Agatat has been damaged in an amount to be proven at trial.

## COUNT TWO
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

66.     Agatat repeats and realleges each allegation of this Complaint as if fully set forth in this claim.

67.     Arizona law implies a covenant of good faith and fair dealing into every contract.

68.     At all material times, the Academy owed Agatat a duty of good faith and fair dealing arising out of performance under the Tuition Agreement.

69.     At all material times, the Academy owed Agatat a duty of good faith and fair dealing arising out of performance under the Tuition Waiver Agreement.

70.     The Academy breached the duty of good faith and fair dealing it owed under the Tuition Agreement when it dismissed Agatat from the Aviate program without justification.

71.     The Academy breached the duty of good faith and fair dealing it owed under the Tuition Waiver Agreement when it required Agatat to repay a sum equivalent to the Tuition Waiver when it dismissed Agatat from the Aviate program without justification.

72.     As a direct and proximate result of The Academy's conduct, Agatat has sustained damages in an amount to be proven at trial.

/ / /

8

23452-23452-00001\AAT\JJB\6049347v1

## COUNT THREE
## PROMISSORY ESTOPPEL

73.     Agatat repeats and realleges each allegation of this Complaint as if fully set forth.

74.     Alternatively, to the extent the Court determines the Parties did not enter into an enforceable contract, the Academy made a clear and unambiguous promise to Agatat that it would provide him education services in exchange for his payment of tuition.

75.     The Academy also made a clear and unambiguous promise to Agatat that it would provide him a Tuition Waiver if he enrolled in the Aviate program and pursued his commercial pilot license in good faith.

76.     The Academy should have reasonably foreseen that Agatat would rely upon these promises.

77.     Agatat relied on the Academy's promise to his detriment as he obtained a student loan to pay for his tuition and has not received the education services promised to him.

78.     Agatat's reliance on the Academy's promises was justified.

79.     Agatat has been damaged as a result of the Academy's actions.

## COUNT FOUR
## UNJUST ENRICHMENT

80.     Agatat repeats and realleges each allegation of this Complaint as if fully set forth in this claim.

81.     In the event the Court determines the parties did not enter into an enforceable contract, this Count is pled in the alternative.

82.     By the Academy's acts and omissions set forth above, the Academy received and was enriched by Agatat's payment of tuition and repayment of the Tuition Waiver.

9

JABURG WILK
LAW FIRM

83.    Agatat has been impoverished by the Academy's failure to provide him education services in exchange for his payment of tuition.

84.    Agatat has also been impoverished by his forced repayment of the Tuition Waiver back to the Academy.

85.    There is a clear connection between Agatat's impoverishment and the Academy's enrichment.

86.    It would be inequitable and unjust to permit The Academy to retain the benefit of Agatat's tuition payment.

**COUNT FIVE**
**CONSUMER FRAUD**

87.    Agatat incorporates by reference all above allegations as if fully set forth herein.

88.    Pursuant to the Arizona Consumer Fraud Act ("ACFA"):

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522(A).

89.    The Academy's education services qualify as "merchandise" under the ACFA. *See* A.R.S. § 44-1521(5).

90.    Agatat's payment of tuition in exchange for education services constituted a "sale" of "merchandise" under the ACFA. A.R.S. § 44-1521(7).

91.    The Academy violated the ACFA by making false promises and/or misrepresentations about the total cost of its program and the amount of time it would take a student to complete pilot training.

10

23452-23452-00001\AAT\JJB\6049347v1

92.     The Academy's false representations and/or omissions about the Aviate program on its website and made by its agents qualify as "advertisements" of "merchandise" under the ACFA. A.R.S. § 44-1521(1).

93.     The Academy made such false representations and/or omissions with the intent that Agatat and other prospective students rely on them.

94.     Agatat reasonably relied on the Academy's false representations and/or omissions about the Aviate program when he chose to enroll in the Academy.

95.     As a result, Agatat suffered damages in an amount to be made at trial.

96.     The Academy engaged in deceptive practices that were wanton, reckless, spiteful, motivated by ill-will, and that were made with reckless indifference to Agatat's interests. As a result, Agatat is entitled to an award for punitive damages.

## DISCOVERY TIER

97.     Agatat requests that this case be assigned to Tier 2 for discovery purposes.

## JURY TRIAL DEMAND

98.     Agatat demands a jury trial on all claims and issues set forth herein.

## REQUEST FOR RELIEF

WHEREFORE, Agatat requests a judgment against The Academy as follows:

    a.  For compensatory damages;

    b.  For consequential damages;

    c.  For punitive damages pursuant to A.R.S. § 44-1521, *et seq.*;

    d.  For prejudgment interest at the highest legal rate from the date due until the date of judgment;

    e.  For reasonable attorneys' fees and costs;

11

23452-23452-00001\AAT\JJB\6049347v1

f.  For interest on the foregoing amounts at the highest legal rate from the date of Judgment until paid; and

g.  For such other and further relief as is proper and just.

**DATED** this 21st day of June, 2024.

**JABURG & WILK, P.C.**

/s/ Alden A. Thomas
Alden A. Thomas (#031900)
aat@jaburgwilk.com
Corrinne R. Viola (#033386)
crv@jaburgwilk.com
Emma J. Freeburg (#038865)
ejf@jaburgwilk.com
*Attorneys for Plaintiff*

12

23452-23452-00001\AAT\JJB\6049347v1

# EXHIBIT C

1   Steven G. Biddle, AZ Bar No. 012636
    sbiddle@littler.com
2   Amanda M. Browder, Bar No. 030687
    abrowder@littler.com
3   LITTLER MENDELSON, P.C.
    2425 East Camelback Road, Suite 900
4   Phoenix, Arizona 85016
    Telephone:    602.474.3600
5   Fax No.:      602.957.1801

6   Attorneys for Defendant

7                   SUPERIOR COURT OF THE STATE OF ARIZONA

8                              COUNTY OF MARICOPA

9

10  Ocean Agatat,                          Case No. CV2024-016166

11              Plaintiff,                  **AMENDED NOTICE TO ADVERSE
                                            PARTY OF REMOVAL TO**
12  v.                                      **FEDERAL COURT**

13  Westwind School of Aeronautics, Phoenix,
    LLC dba United Aviate Academy,
14
                Defendant.
15

16      **TO:   OCEAN AGATAT**

17          PLEASE TAKE NOTICE that on July 12, 2024, Defendant Westwind School of

18  Aeronautics, Phoenix, LLC, ("Defendant"),  removed this action from this Court to the U.S.

19  District Court for the District of Arizona. Defendant inadvertently did not include the copy
20
    of the Notice of Removal. This Notice has been Amended to include the Notice of Removal
21
    attached hereto as **Exhibit A**.
22

23  Dated: July 12, 2024

24
                                        /s/Amanda M. Browder
25                                      Steven G. Biddle
                                        Amanda M. Browder
26                                      LITTLER MENDELSON, P.C.

27                                      Attorneys for Defendant

28

LITTLER MENDELSON, P.C.
Camelback Esplanada
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

1  ORIGINAL of the foregoing filed via
   AZTurboCourt and served via email
2  this 12th day of July 2024, to:

3  Alden A. Thomas
   Corrinne R. Viola
4  Emma J. Freeburg
   JABURG & WILK, P.C.
5  1850 N. Central Avenue, Suite 1200
   Phoenix, Arizona 85004
6  aat@jaburgwilk.com
   crv@jaburgwilk.com
7  ejf@jaburgwilk.com

8

9  *s/Michelle Renee Mercure*
   4891-1859-9120.1 / 087218-1104

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

2

NOTICE TO ADVERSE PARTY OF
REMOVAL TO FEDERAL COURT

| | |
|---|---|
| **From:** | TurboCourt Customer Service |
| **To:** | Mercure, Michelle Renee; PHO-ECF |
| **Subject:** | AZTurboCourt E-Filing Courtesy Notification |
| **Date:** | Friday, July 12, 2024 3:38:19 PM |

**[EXTERNAL E-MAIL]**

PLEASE DO NOT REPLY TO THIS EMAIL.

A party in this case requested that you receive an AZTurboCourt Courtesy Notification.

AZTurboCourt Form Set #9744870 has been delivered to Maricopa County - Superior Court.

You will be notified when these documents have been processed by the court.

Here are the filing details:
Case Number: CV2024016166 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Filed By: Amanda M Browder
AZTurboCourt Form Set: #9744870
Delivery Date and Time: Jul 12, 2024 3:37 PM MST

Forms:


Attached Documents:
Notice of Removal to Federal Court: Amended Notice to Adverse Parties of Removal to Federal Court


E-Service notification was sent to the following recipient(s):

Alden A. Thomas at aat@jaburgwilk.com
Corrine R. Viola at crv@jaburgwilk.com
Emma J. Freeburg at ejf@jaburgwilk.com

# EXHIBIT D

1   Steven G. Biddle, AZ Bar No. 012636
    sbiddle@littler.com
2   Amanda M. Browder, Bar No. 030687
    abrowder@littler.com
3   LITTLER MENDELSON, P.C.
    2425 East Camelback Road, Suite 900
4   Phoenix, Arizona 85016
    Telephone:    602.474.3600
5   Fax No.:      602.957.1801

6   Attorneys for Defendant

7

8                 SUPERIOR COURT OF THE STATE OF ARIZONA

9                            COUNTY OF MARICOPA

10

11  Ocean Agatat,                          | Case No. CV2024-016166

12               Plaintiff,                 | **NOTICE TO STATE COURT OF**
                                            | **REMOVAL OF CIVIL ACTION TO**
13  v.                                      | **FEDERAL COURT**

    Westwind School of Aeronautics, Phoenix,
14  LLC dba United Aviate Academy,

15               Defendant.

16

17  **TO:   CLERK OF THE SUPERIOR COURT OF ARIZONA, COUNTY OF**
        **MARICOPA:**

18
          PLEASE TAKE NOTICE that on July 12, 2024, Defendant Westwind School of
19
    Aeronautics, Phoenix, LLC, removed this action from this Court to the U.S. District Court
20
    for the District of Arizona. A copy of the Notice of Removal is attached as **Exhibit A**.
21
    Dated: July 12, 2024
22
                                    /s/Amanda M. Browder
23                                  Steven G. Biddle
                                    Amanda M. Browder
24                                  LITTLER MENDELSON, P.C.

25                                  Attorneys for Defendant

26

27

28

LITTLER MENDELSON, P.C.
Camelback Esplanada
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

1    ORIGINAL of the foregoing filed via
     AZTurboCourt and served via email
2    this 12th day of July 2024, to:

3    Alden A. Thomas
     Corrinne R. Viola
4    Emma J. Freeburg
     JABURG & WILK, P.C.
5    1850 N. Central Avenue, Suite 1200
     Phoenix, Arizona 85004
6    aat@jaburgwilk.com
     crv@jaburgwilk.com
7    ejf@jaburgwilk.com

8

9    /s/ Michelle Renee Mercure
     4876-5880-3150.1 / 087218-1079
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
Camelback Esplanada
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

2          NOTICE TO STATE COURT OF REMOVAL
           OF CIVIL ACTION TO FEDERAL COURT

| | |
|---|---|
| **From:** | TurboCourt Customer Service |
| **To:** | PHO-ECF |
| **Subject:** | AZTurboCourt E-Filing Courtesy Notification |
| **Date:** | Friday, July 12, 2024 2:10:27 PM |

**[EXTERNAL E-MAIL]**

PLEASE DO NOT REPLY TO THIS EMAIL.

A party in this case requested that you receive an AZTurboCourt Courtesy Notification.

AZTurboCourt Form Set #9743170 has been delivered to Maricopa County - Superior Court.

You will be notified when these documents have been processed by the court.

Here are the filing details:
Case Number: CV2024016166 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Filed By: Amanda M Browder
AZTurboCourt Form Set: #9743170
Delivery Date and Time: Jul 12, 2024 2:09 PM MST

Forms:


Attached Documents:
Notice of Removal to Federal Court: Notice to State Court of Removal of Civil Action to Federal Court


E-Service notification was sent to the following recipient(s):

Alden A. Thomas at aat@jaburgwilk.com
Corrine R. Viola at crv@jaburgwilk.com
Emma J. Freeburg at ejf@jaburgwilk.com